Catron, Ch. J.
delivered the opinion of the court.
In 1818, James Goodrich made his will, and died in 1823. In the meantime, he acquired lands that did not pass by the will. He left two sets of children. To the >munger,he devised the lands of which he was seised and possessed when the will was made. The question is, whether the lands vested in the younger set of children by the will, are settled on them within the meaning of the act of 1784, ch. 22. If so, they must be brought into partition or hotch pot, with the lands descended, and the elder children (if the lands be equal to those passed by the will) be put on the foot of equality. The principle of equality, in partition and distribution of the estates of deceased persons, among all the children, is of great consequence in the preservation of our institutions, and has been adopted as the leading policy of the country by the legislatures of North Carolina and this State. The caption of the act of 1784 avows, that it was intended “to promote that equality of property, which is the spirit and principle of a genuine republic.” The act of 1796, made all the children, brothers and sisters, of the half and whole blood, equal *97 sharers. The act of 1784 provides, that a son or daughter who shall have lands settled on him or her by the deceased parent, equal to the shares which shall descend to the other sons or daughters, shall not take any portion of the lands descended: or if the lands settled be not a full share, it shall be added to, so as to make it an equal. Did the act of 1784 contemplate a settlement by will? Its terms are general. A son or daughter who shall have lands settled on him or her, shall not have partition of an equal share. The act refers to the time of division as well as to the death of the parent; a child at that time standing advanced by the parent, shall not be deemed to have taken by descent more than to make the share equal.
Such is the construction put upon the act in the case of Yance against Huling, by this court in 1826. (a) Samuel Yance made his will, and between its date and the time of his death, acquired lands. At his death, he left his wife pregnant of a son, unprovided for. The lands of the testator, owned at the date of the will, were vested thereby in his other children. The court decided, that the lands passed by the will were advancements to the elder children, and that the posthumous child, took of the acquired lands, equal to his full share of all the lands Samuel Yance died seized of. We are referred to the British cases arising upon the construction of the act of distributions, (22 and 23 Charles II,) as holding a different doctrine. Truly it has been decided, that an advancement or settlement by the will, taking effect at the testator’s death, is not within the meaning of the act, and need not be brought into hotch pot, where the parent died partly testate, and partly intestate. But the reason of the construction grows out of the wording of the British act. Such child only is cut off as had had a *98 settlement made on Mm, or had been advanced by the parent in bis lifetime. The right must have been vested the parent in the child, and taken effect in the lifetime of the parent. 9 Ves. 425. This could notbe done by last will or testament. Yet it was long a matter of doubt and litigation. 18 Ves. 494. The terms employed in the act of 1784, are carefully used not to exclude a case of settlement by will; and considering the policy upon which it proceeds, and the superior ability with which it is drawn, it can hardly be doubted it was so intended by its framers. The English settlement cases, (Amh. 325. 1 Bro. C. C. 65. 2 Bro. C. C. 394. 10 Ves. 477, 478. 18 Ves. 493,) not using the words of the statutes of Charles, “settled in the lifetime,” hut substantially those of our statute, have uniformly received the construction here given to the act of 1784.
It is contended however, that intestacy is required by the words of the English act, (and our statute) and that if there he a will, the statute does not apply. We think this ground cannot he maintained; and follow the case of Norwood against Branch, (N. C. Law Reports 398,) where a construction is given to the act of 1784, by the supreme court of North Carolina, in a controversy in all its features the same with the present, and that of Yance against Huling.
Decree affirmed,